*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 06-5573

ZENEIDA C. RIVERA,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 05-00079—Thomas W. Phillips, District Judge.

Argued: October 22, 2007

Decided and Filed: February 20, 2008

Before: MARTIN, GIBBONS, and SUTTON, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Mike Whalen, Knoxville, Tennessee, for Appellant. Jeffrey E. Theodore, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Mike Whalen, Knoxville, Tennessee, for Appellant. Jeffrey E. Theodore, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge. Zeneida Rivera pled guilty and was convicted of transporting illegal aliens from New Jersey to Knoxville, Tennessee for the purpose of obtaining driver's licenses for the aliens. She alleges that the district court erred by selecting the United States Sentencing Guideline provision applicable to fraudulent documents related to naturalization, rather than the provision applicable to generic fraud and forgery. Because we agree with Rivera that the documents she procured were not related to immigration or naturalization, we REVERSE the district court and REMAND for re-sentencing under U.S. Sentencing Guideline § 2B1.1.

I.

From October 2004 until July 2005, Rivera transported illegal aliens from New Jersey to Tennessee in order to procure "certificates for driving" for the aliens. To this end, she provided transportation from New Jersey, hotel rooms while in Tennessee, and documents purporting to show that the aliens had addresses in the state. After a prolonged investigation, Rivera was arrested and

1

pled guilty under 18 U.S.C. § 1028 for conspiring to cause the unauthorized production of Tennessee driver's licenses. Rivera's Presentence Investigation Report listed U.S. Sentencing Guideline § 2L2.1[1] as the applicable guideline for Rivera's case, finding that she trafficked in documents related to naturalization, citizenship or legal resident status. The Report also included enhancements for producing more than 100 documents, and for being a leader of a conspiracy involving five or more participants.

For a violation of § 1028, the Statutory Index directs the district court to three possible provisions for calculation of the base Guideline range: § 2B1.1 ("Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments . . ."), § 2L2.1 ("Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status . . ."), or § 2L2.2.[2] U.S.S.G. App. A (2005). Rivera objected to her sentence under § 2L2.1, maintaining that she should be charged under § 2B1.1 because the certificates obtained by the aliens were not driver's licenses, but rather "certificates" showing only that one had passed a driving test.

On April 19, 2006, the district court overruled Rivera's objections and sentenced her to 46 months' imprisonment under U.S.S.G. § 2L2.1 and included both criminal enhancements for producing more than 100 documents and for leading the conspiracy. Rivera filed a timely notice of appeal on April 26, 2006, maintaining that (1) the trial court erred in denying Rivera's objection to the application of U.S.S.G. § 2L2.1, and (2) the court's imposition of the maximum sentence in the guideline range was substantially unreasonable.

This Court reviews *de novo* the question of whether the district court selected the correct Guideline provision from among those listed in the Statutory Index. *United States v. Hochschild*, 442 F.3d 974, 977 (6th Cir. 2006). Because we find that the district court sentenced Rivera under the wrong guideline, we will not address the substantive reasonableness of the sentence.

II.

In 2004, Tennessee enacted a dual system of driver's licenses and "certificates for driving" in an effort to make the roads safer and to comport with the federal government's increased security standards. The certificates were issued to illegal aliens and aliens who were not lawful permanent residents of the state, while licenses were issued only to citizens and lawful permanent residents. Tenn. Code Ann. § 55-50-321. The new law specifically contemplated illegal aliens procuring these certificates. Tenn. Comp. R. & Regs. 1340-1-13-.08(1)(c) (making illegal aliens eligible for certificates for driving) (repealed 2006).[3] The licenses and certificates were substantially similar, except for the certificate's earlier expiration date and a phrase on its face that stated "For driving purposes only - not valid for identification." Tenn. Code Ann. § 55-50-102(6) (2007).

In defending the dual system against an Equal Protection claim, the State Attorney General's office said that Tennessee "furthered [the interests of road safety and national security] on a rational basis when it decided to issue driver's licenses to citizens and permanent lawful resident aliens while also issuing certificates for driving to illegal aliens." Brief of Appellees at 14, *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007). A federal court agreed:

---

[1] Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status, or a United States Passport; False Statement in Respect to the Citizenship or Immigration Status of Another; Fraudulent Marriage to Assist Alien to Evade Immigration Law.

[2] § 2L2.2 does not apply here because it pertains to documents procured for one's own use.

[3] Illegal aliens became ineligible for Tennessee certificates for driving when this amendment was repealed.

The State of Tennessee has the difficult and politically charged task of making the highways safe for driving and also making the state safe from crime and terrorism. In balancing these interests, the State has decided to issue driver's licenses to citizens and lawful permanent resident aliens while also issuing driving certificates to illegal aliens and aliens who are not permanent lawful residents.

*League of United Latin Am. Citizens v. Bredesen*, 2004 U.S. Dist. LEXIS 26507, at *18 (M.D. Tenn. 2004), *aff'd*, 500 F.3d 523 (6th Cir. 2007).

The certificates could not be used for identification, but they could be used for motor vehicle operation, both in Tennessee and in other states. This was the intended use proffered by the aliens, who told their arresting officer that they wanted the licenses so that they could drive to their jobs in New Jersey. The reason that they did not obtain driver's licenses in New Jersey was that proof of legal immigrant status was required in the application.

Rivera pled guilty to "provid[ing] the aliens documents, such as mail and vehicle registrations, that showed a Knoxville address." The plea agreement says nothing about providing false proof of legal status, and indeed, none was needed to obtain the certificates in Tennessee because they were intended for illegal aliens. She maintains, and we agree, that these certificates were not related to naturalization, citizenship, or legal status. First of all, the certificates were not intended to be used as identification, and stated so directly on their face. Second, because they explicitly stated that they could not be used for identification purposes, such certificates likely could not be used to gain any of the benefits of legal status; if they could be put to such use, Tennessee's own policy is at fault, not the people who acted under it. *See* U.S.S.G. § 2B1.1 cmt. n.9(B). Finally and most importantly, there was no evidence on the record that any of the certificates were actually used to obtain legal status. We therefore find that the certificates were unrelated to naturalization, citizenship, or legal status, and that the district court erred in sentencing Rivera under Guideline § 2L2.1.

### III.

Because we agree with Rivera that the district court erred in sentencing her under Guideline § 2L2.1, we do not address the substantive reasonableness of her sentence under that statute. Instead, we REVERSE the district court and REMAND for re-sentencing under U.S. Sentencing Guideline § 2B1.1.